A92A1224. SAPP et al. v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY.
(424 SE2d 871)

JOHNSON, Judge.

Irvin Sapp and his daughter Tammy Sapp filed suit against Georgia Farm Bureau Mutual Insurance Company in the Superior Court of Evans County. They alleged in their complaint that they were the owners of an out-building located on seven acres of land owned by Irvin Sapp, that the out-building had been destroyed by a storm, that at the time it was destroyed the out-building was covered by a homeowner's policy issued by Farm Bureau, and that Farm Bureau had wrongfully refused to pay their claim. Following completion of discovery which included the depositions of both plaintiffs, Farm Bureau filed separate motions for summary judgment against each plaintiff. As to Irvin Sapp, Farm Bureau did not dispute that he owned the out-building and the land upon which it sat, but asserted that he was not an insured under the policy in question. That being undisputed, the trial court granted Farm Bureau's motion and entered judgment against Irvin Sapp. No appeal was taken from that judgment.

As to Tammy Sapp, Farm Bureau asserted that she did not own the out-building, nor the land upon which it sat, and that it was not otherwise covered because it was not located on her "residence premises" as defined by her homeowner's policy. The trial court agreed, and granted Farm Bureau summary judgment against Tammy Sapp. She appeals.

In her only enumeration of error, Tammy Sapp asserts that the trial court erred in granting Farm Bureau's motion for summary judgment because genuine issues of material fact exist that must be presented to a jury. We disagree.

Contrary to her allegation in her complaint, it is now clear and uncontroverted that Tammy Sapp had no ownership interest in either

the out-building or the land. Sapp argues, however, that her policy nevertheless provides coverage because the mobile home endorsement defines residence premises as follows:

"8. 'residence premises' means the mobile home and other structures located on land owned or leased by you where you reside and which is shown as the "residence premises" in the Declarations."

It is not disputed that the subject out-building is not itself shown as a covered structure on the Declarations page of the policy. Therefore, we must consider whether the trial court erred in determining as a matter of law that Tammy Sapp did not lease the property upon which it sat from her father so as to make it part of her "residence premises."

The facts in the record are detailed as follows: Irvin Sapp bought seven acres of land from Marcus Dukes on November 22, 1989. At the time of purchase there was a mobile home occupied by Lisa Dukes located on the property, as well as the out-building which is the subject of the claim in this case. Lisa Dukes was allowed to keep her mobile home on the property in exchange for the payment of rent. There was no written lease, nor was there any agreement as to the exact boundaries of Lisa Duke's leasehold interest. In December 1989, shortly after the purchase, Irvin Sapp allowed his daughter Tammy to move her mobile home onto the land. She parked her mobile home next to that of Lisa Dukes. The subject out-building was located near Irvin Sapp's garden some 200 to 250 feet away from the two mobile homes. The out-building was used by Irvin Sapp to store his tractor, other farm equipment, garden tools, a freezer, and other items of his personal property. He allowed his daughter Tammy access to the out-building to share the freezer, to store a box of her personal clothes, to use a sink he had installed therein to wash her dog, and to store a push-type lawnmower he had given her.

In his deposition, Irvin Sapp admitted that he was the sole owner of the seven-acre tract upon which the out-building sat. He admitted that his daughter Tammy had no legal interest in the tract other than the bare expectancy that she would inherit the property upon his death. He admitted that he did not lease the property to his daughter, though he did allow her the privilege of parking the mobile home there. He admitted that his daughter paid him no rent, and he admitted that she did not perform any service in exchange for being allowed to park her mobile home on his property or for the limited use she made of the subject out-building. In her deposition, Tammy Sapp admitted the facts just outlined, and also made the following statements:

"Q. Who owns the property upon which your trailer is located and Lisa's trailer is located?

"A. My father, Irvin Sapp.

"Q. Do you lease from Mr. Sapp?

"A. No, sir, I do not.

"Q. Does Lisa lease from him?

"A. Lisa does.

"Q. Does your father just let you stay there?

"A. Yes, sir."

After Farm Bureau filed its motions for summary judgment, Irvin Sapp and Tammy Sapp each filed affidavits which contradicted their earlier deposition testimony by asserting that they did in fact have a lease agreement, and that it was supported by the consideration of their mutual love and affection. Nowhere, however, are the exact boundaries of the alleged leasehold interest defined. The affidavits went on to say that Tammy Sapp was "allowed to use" the subject out-building. Neither affidavit ever said, however, that the subject out-building was located on whatever portion of the property Tammy Sapp allegedly leased from her father.

We begin our analysis by pointing out that both plaintiffs gave completely contradictory testimony on the question of whether there was any lease agreement between them. It was only in response to Farm Bureau's motions for summary judgment that either plaintiff claimed that there was any lease, and even then they did not delineate the boundaries or any of the other terms and limitations of the alleged lease agreement. Nor did either plaintiff attempt to explain their earlier contradictory testimony. "The rule in Georgia is that the testimony of a party who offers himself as a witness in his own behalf at trial is to be construed most strongly against him when it is self-contradictory, vague or equivocal." (Citations and punctuation omitted.) *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (343 SE2d 680) (1986). "The courts concluded that this rule must necessarily be applied to summary judgment proceedings, otherwise, 'any opposing party may, by the simple device of filing conflicting affidavits, get the motion denied. The temptations to perjury are greater in this situation than in a jury trial. . . .' " Id. We could follow that rule here, concluding that there was no lease to bring the out-building under the coverage of the policy and end our discussion. However, even if we ignore the contradictions and assume that there was a lease of some portion of Irvin Sapp's property, Tammy Sapp's assertion that the out-building was insured under the homeowner's policy covering her mobile home must nevertheless fail.

It is a basic principle that one may only insure property as to which one has an insurable interest. OCGA § 33-24-4 (a) provides that " 'insurable interest' means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment." Mere possession or license to use the subject out-building

standing alone is clearly insufficient to create in Tammy Sapp an insurable interest. See generally *Splish Splash Waterslides v. Cherokee Ins. Co.*, 167 Ga. App. 589, 591 (307 SE2d 107) (1983).

The purpose for insurance policy clauses such as the one relied upon by Tammy Sapp in this case is to assist holders of a leasehold interest to define what structures other than their dwelling house are to be covered by their insurance, and to define the limits of risk the carrier undertakes with regard to those undefined "other structures" actually located on the leased premises. Under the circumstances of this case, there are only two ways which Tammy Sapp could acquire an insurable interest in the subject out-building.

First, she could show that the boundaries of her alleged lease, whether written or oral, were precisely fixed, included the area upon which the out-building sat, were contemplated by both the carrier and herself at the time she applied for the insurance, and were defined in the policy at the time it was issued. Given the testimony of Tammy Sapp and Irvin Sapp, and in the absence of any evidence to the contrary, the trial court could have concluded that any "leased land" in this case was limited to the land upon which Tammy Sapp's mobile home actually sat. For purposes of our analysis, the presence of the Lisa Dukes trailer on the property is significant. Under the construction of the policy language urged by Tammy Sapp, she would have acquired an insurable interest in the mobile home of Lisa Dukes had she been allowed to store food in Lisa Dukes' refrigerator, wash her dog there, and leave items of personal clothing for storage there. This would be so because neither her own nor Lisa Dukes' leasehold boundaries were precisely defined, though both mobile homes were situated adjacent to each other on the same seven-acre tract. Such an analogy shows why the construction urged by Tammy Sapp is absurd under the particular facts of this case.

There is a second way Tammy Sapp could have brought the subject out-building within the coverage of her homeowner's policy without being required to further define the exact boundaries of her leasehold interest. She could have specifically identified the out-building to the Farm Bureau agent at the time the application was made and the policy issued as being an "other structure" she intended to be covered. Express inclusion of this particular "other structure" in the policy would have avoided the instant controversy over coverage.

When Farm Bureau brought the motion for summary judgment citing Tammy Sapp's admission that there was no lease agreement between herself and her father, the burden was upon her to show that there existed genuine issues of material fact as to coverage for the out-building. She failed to do so. Summary judgment is proper where the moving party shows that he is entitled to judgment as a matter of law and there is no genuine issue as to any material fact. *Minor v. E.*

*F. Hutton & Co.*, 200 Ga. App. 645, 646 (2) (409 SE2d 262) (1991). The trial court did not err in granting summary judgment to Farm Bureau.

*Judgment affirmed. Carley, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 6, 1992.

*Hallman & Associates, Ronald W. Hallman, D. Jay Stewart*, for appellants.

*Forbes & Bowman, Morton G. Forbes, Catherine M. Bowman*, for appellee.